FILED
JAMES BONINI
CLERK

06 MAR -3 PM 2:36

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

C2 06 168

| | | |
|---|---|---|
| Ohio Surgery Center, Ltd. | ) | Case No. |
| Plaintiff, | ) | Honorable JUDGE FROST |
| v. | ) | COMPLAINT MAGISTRATE JUDGE KING |
| Nueterra Holdings, LLC,<br>formerly known as ASC Group, LC<br>c/o<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 | )<br>)<br>)<br>) | Gerardo R. Rollison (0027088)<br>Jennifer J. Dawson (0033707)<br>MARSHALL & MELHORN, LLC<br>Four SeaGate, Eighth Floor<br>Toledo, Ohio 43604<br>(419) 249-7100<br>(419) 249-7151 (Fax) |
| Defendant. | ) | Counsel for Plaintiff<br>Ohio Surgery Center, Ltd. |
| | ) | |

**Parties**

1. Plaintiff, Ohio Surgery Center, Ltd. ("OSC" or the "Company"), is an Ohio limited liability company with its principal place of business located at 930 Bethel Road, Columbus, Ohio 43214. OSC was formed for the purpose of developing, owning and operating a surgical center.

2. Defendant, Nueterra Holdings, LLC, formerly known as ASC Group, L.C. ("Nueterra/ASC"), is a Delaware limited liability company, and a Member of OSC. Nueterra/ASC does business in Franklin County, Ohio.

3. Nueterra Healthcare Management, LLC, formerly known as ASC Management, L. L.C. ("Nueterra/ASC Management") is a Delaware limited liability company and an affiliate and/or wholly owned subsidiary of ASC. Nueterra/ASC Management manages numerous surgery centers in

Franklin County, Ohio, including but not limited to OSC.

**Jurisdiction**

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

**Facts**

**The Operating Agreement**

5. Defendant Nueterra/ASC, as a member of plaintiff OSC, entered into a contract with OSC entitled Amended and Restated Operating Agreement of Ohio Surgery Center, Ltd., which was amended on July 23, 2002, March 9, 2004, June 28, 2004 and October 18, 2005, (the "Operating Agreement"). A copy of the Operating Agreement is attached hereto and incorporated herein as Exhibit A.

6. The Operating Agreement contains a restrictive covenant applicable to Members at Section 4.8, as amended on October 15, 2005. The restrictive covenant provides in pertinent part that "No Member (including ASC) may, directly or indirectly or through one or more Affiliates own, manage, operate, control, or participate in any manner in the ownership, management, operation, or control of, or serve as a partner, employee, principal, agent, consultant, or otherwise contract with , invest in, possess a financial interest in (whether as owner, security holder, creditor, consultant or otherwise), receive any compensation or remuneration from … any other person or entity that operates, a facility (including an ambulatory surgical center, hospital or office-based or practice-based facility or operating site or room) … which operates within a twenty (20) mile radius of the Facility and which provides the technical or facility fee component of outpatient surgical services…."

7. The Operating Agreement provides that Nueterra/ASC agrees that the restraints imposed by Section 4.8 of the Operating Agreement are "reasonable as to time, scope and geographic limitation…."

8. Nueterra/ASC, directly or indirectly, or through one or more of its affiliates including Nueterra/ASC Management is violating the restrictive covenant by, managing, operating, receiving compensation from, and investing in or possessing a financial interest in one or more facilities which operate within a twenty mile radius of OSC, and which provide the technical or facility fee component of outpatient surgical services,

9. On January 27, 2006, OSC delivered correspondence to Nueterra/ASC, a copy of which is attached hereto and incorporated herein as Exhibit B, constituting notice (the "Breach Notice") that:

a. Nueterra/ASC is in material breach of the restrictive covenant applicable to members set forth in Section 4.8 of the Operating Agreement as a result of the management by and interest of Nueterra/ASC or its affiliates in competing surgical centers within a twenty mile radius of OSC;

b. Nueterra/ASC must cure its breach by divesting itself of all such interests in violation of the restrictive covenant at Section 4.8 of the Operating Agreement;

c. Nueterra/ASC's failure to cure its material breach of Section 4.8 of the Operating Agreement constitutes a Buy/Sell event pursuant to Section 13.1(f) of the Operating Agreement; and

d. OSC intends to exercise, pursuant to Section 13.3 of the Operating Agreement, its option to purchase Nueterra/ASC's units.

10. Despite receipt of the Breach Notice, Nueterra/ASC has failed to cure its material breaches of the restrictive covenant in the Operating Agreement, and refuses to sell its units in OSC as required by the Buy/Sell provisions of the Operating Agreement.

**The Management Agreement**

11. Nueterra/ASC Management entered into a management agreement with OSC effective January 24, 1998 and amended June 8, 2001 (the "Management Agreement"). A copy of the Management Agreement is attached hereto and incorporated herein as Exhibit C.

12. The Management Agreement terminates, without cause, as of March 31, 2006 upon ninety-day written notice as set forth in Section 7.1 of the Management Agreement, as amended on June 8, 2001.

**OSC's Election Not to Renew the Management Agreement**

13. On November 8, 2005, and again on December 27, 2005, OSC delivered to Nueterra/ASC Management written notices, pursuant to Section 7.1 of the Management Agreement, that OSC elected not to renew the Management Agreement ("Notice of Election of Non-renewal"). A copy of the Notices of Election of Non-renewal are attached hereto and incorporated herein as Exhibits D and E respectively.

**OSC's Termination of the Management Agreement for Cause**

14. Section 7.3(3) of the Management Agreement, as amended on June 8, 2001 provides that "... if Daniel Tasset and Richard Vincent fail to have or maintain a meaningful and decision making executive position with ASC Group and if, together, they cease to have voting control over

significant company issues, Owner may terminate this Agreement upon delivery of written notice ...."

15. Richard Vincent no longer maintains a "meaningful and decision making executive position with ASC Group ...."

16. On January 27, 2006, OSC delivered to Nueterra/ASC written notice of termination of the Management Agreement, for cause, in accordance with Section 7.3(3) of the Management Agreement (the "For Cause Termination Notice"). A copy of the For Cause Termination Notice is attached hereto and incorporated herein as Exhibit F.

**The Buy/Sell Events**

17. Section 13.1 (m) of the Operating Agreement provides that "in the case of a Member whose Membership Interests are attributable primarily to services that the Member provides to the Company ..., termination of the right or failure to continue to provide those services will trigger a Buy-Sell Event ...."

18. The termination of the right of Nueterra/ASC to provide services to OSC pursuant to both OSC's election not to renew, and OSC's termination for cause, constitute Buy-Sell events pursuant to Section 13.1 (m) of the Operating Agreement, requiring Nueterra/ASC to sell its units in OSC and entitling OSC to exercise its exclusive right to purchase Nueterra/ASC's units in accordance with Section 13.3 of the Operating Agreement.

19. Nueterra/ASC refuses to sell its units in OSC to OSC.

**Claim One**

20. OSC incorporates as though fully rewritten herein the allegations set forth above.

21. Nueterra/ASC is in material breach of the restrictive covenant set forth in Section 4.8 of the Operating Agreement by directly or indirectly, or through one or more affiliates, managing, operating, receiving compensation from, investing in or possessing a financial interest in a facility which operates within a twenty (20) mile radius of the Facility and which provides the technical or facility fee component of outpatient surgical services.

22. As a result of Nueterra/ASC's material breach of the Operating Agreement, OSC has suffered damages in an amount not yet determined but estimated to be in excess of $25,000.00.

**Claim Two**

23. OSC incorporates as though fully rewritten herein the allegations set forth above.

24. Nueterra/ASC's material breach of the restrictive covenant set forth in Section 4.8 of the Operating Agreement, and its failure to cure such material breach within ten days of written notice, constitutes a Buy-Sell Event pursuant to Section 13.1(f) of the Operating Agreement.

25. OSC has an exclusive option to purchase Nueterra/ASC's units for the amount equal to its Capital Account balance as of the end of the preceding fiscal year as set forth in Section 13.5(c) of the Operating Agreement, which provides for the valuation of the units when the Buy/Sell Event is due to material breach of the Operating Agreement.

26. Nueterra/ASC refuses to permit OSC to exercise its exclusive option to purchase Nueterra/ASC's units.

27. OSC is entitled to a declaration from this court that OSC is entitled to exercise its exclusive right to purchase Nueterra/ASC's units for the amount equal to Nueterra/ASC's Capital Account balance as of the end of the preceding fiscal year as set forth in Section 13.5(c) of the

Operating Agreement, which sets forth the valuation of the units when the Buy/Sell Event is due to material breach of the Operating Agreement.

**Claim Three**

28. OSC incorporates as though fully rewritten herein the allegations set forth above.

29. Section 13.1 (m) of the Operating Agreement provides that "in the case of a Member whose Membership Interests are attributable primarily to services that the Member provides to the Company ..., termination of the right or failure to continue to provide those services will trigger a Buy-Sell Event ...."

30. The termination of the right of Nueterra/ASC Management to provide services to OSC pursuant to OSC's election not to renew the Management Agreement, constitutes a Buy-Sell event pursuant to Section 13.1 (m) of the Operating Agreement.

31. OSC has an exclusive option to purchase Nueterra/ASC's units for the price set forth in Section 13.5 (b) of the Operating Agreement, as amended on March 9, 2004.

32. Nueterra/ASC refuses to allow OSC to exercise its exclusive right to purchase Nueterra/ASC's units.

33. OSC is entitled to a declaration from this court that OSC is entitled to exercise its exclusive right to purchase Nueterra/ASC's units for the price set forth in Section 13.5 (b) of the Operating Agreement, as amended on March 9, 2004.

**Claim Four**

34. OSC incorporates as though fully rewritten herein the allegations set forth above.

35. The termination of the right of Nueterra/ASC Management to provide services to OSC as a result of OSC's termination of the Management Agreement for cause constitutes a Buy-Sell event pursuant to Section 13.1 (m) of the Operating Agreement.

36. OSC has an exclusive option to purchase Nueterra/ASC's units for the price set forth in Section 13.5 (b) of the Operating Agreement, as amended on March 9, 2004.

37. Nueterra/ASC refuses to allow OSC to exercise its exclusive right to purchase Nueterra/ASC's units.

38. OSC is entitled to a declaration from this court that OSC is entitled to exercise its exclusive right to purchase Nueterra/ASC's units for the price set forth in Section 13.5 (b) of the Operating Agreement, as amended on March 9, 2004.

Wherefore, OSC demands:

a. a declaration from this Court that Nueterra/ASC is in material breach of the Operating Agreement and an order enjoining Nueterra/ASC from breaching its restrictive covenant;
b. judgment against Nueterra/ASC and in favor of OSC in an amount yet to be determined but in excess of $25,000 in damages incurred by OSC associated with Nueterra/ASC's material breach of the Operating Agreement;
c. a declaration by this court that Buy/Sell Events have occurred, and an order from this Court that Nueterra/ASC be required to sell, and OSC be permitted to purchase, Nueterra/ASC's units in OSC pursuant to Section 13 of the Operating Agreement;
d. an award of attorney fees and expenses incurred herein; and
e. any other relief deemed just and appropriate by this Court.

Respectfully submitted,

Gerardo R. Rollison
Jennifer J. Dawson

By ______________________